**358 P.2d 715**

**GOODYEAR AIRCRAFT CORPORATION, Petitioner,**

v.

**INDUSTRIAL COMMISSION of Arizona and Alfred E. Segobiano, Respondents.**

No. 6943.

Supreme Court of Arizona.

Jan. 18, 1961.

John E. Madden, Charles M. Brewer and John Geoffrey Will, Phoenix, for petitioner.

W. L. Farringer and Lawrence C. Cantor, Phoenix, for respondent, Alfred E. Segobiano.

Donald J. Morgan, Phoenix, for respondent, Industrial Commission of Arizona.

BERNSTEIN, Vice Chief Justice.

The basic question presented in this case is whether an employee, whose employer was insured against liability for the payment of accident benefits and compensation under Arizona's Workmen's Compensation Law, A.R.S. § 23–901 et seq., is entitled to an award for *scheduled* permanent partial disability for an injury causing a partial loss of hearing when there was evidence tending to show a previous hearing loss not occasioned by an injury.

The respondent-claimant Segobiano, while in the employ of the petitioner Goodyear Aircraft Corporation, suffered a loss of hearing by an injury to his right ear occasioned by an industrial accident-noise arising out of and in the course of his employment. On December 1, 1958, The Industrial Commission held the injury to be compensable, and on the basis of the medical experts' testimony permanent partial disability was awarded for a ten percent loss of hearing. On the basis of this finding, an award was granted for fifty-five percent of Segobiano's average monthly wage for six months. Following petitioner's timely request for rehearing, hearings were held. On July 15, 1959, The Industrial Commission entered an award finding that Segobiano's disability was a ten percent bilateral loss of hearing and affirmed its earlier award. Writ of certiorari issued.

The evidence adduced at the hearings disclosed that on March 6, 1958, Segobiano, while bucking rivets on a wing spar, suffered an injury to his right ear when a rivet was shot that created a "terrific noise." He immediately felt pressure in his right ear. The Industrial Commission's Medical Advisory Board reported:

" * * * Our examination reveals bilateral hearing loss of the preceptive or inner ear type consistent with acoustic trauma.

"Total loss of hearing bilateral is 28%.

"We recommend 10% disability. He should avoid noisy type of occupation."

Dr. Robert C. Foreman, a member of the Medical Advisory Board and the plant physician of the petitioner, testified to the history of the audiometric tests performed under his direction upon Segobiano—before the accident in question. The substance of his testimony was that Segobiano had a history of hearing loss bilateral.

On the basis of all the evidence The Industrial Commission granted a scheduled permanent partial disability under section 23-1044(B), A.R.S., which provides:

"B. Disability shall be deemed permanent partial disability if caused by any of the following specified injuries, and compensation of fifty-five per cent of the average monthly wage of the injured employee, in addition to the compensation for temporary total disability, shall be paid for the period given in the following schedule:

* * * * * *

"18. For permanent and complete loss of hearing in one ear, twenty months.

"19. For permanent and complete loss of hearing in both ears, sixty months.

* * * * * *

"21. For the partial loss of use of a finger, toe, arm, hand, foot, leg, or partial loss of sight or hearing, fifty per cent of the average monthly wage during that proportion of the number of months in the foregoing schedule provided for the complete loss of such member, or complete loss of sight or hearing, which the partial loss of use thereof bears to the total loss of use of such member or total loss of sight or hearing."

Petitioner contends that in utilizing the above subdivision The Industrial Commission has either ignored or disregarded the evidence relating to the prior hearing disability, or has ignored or disregarded the subdivision of section 23–1044, A.R.S., dealing with prior disabilities. He further argues that if the prior loss of hearing disability were taken into consideration, the award should have been calculated as a non-scheduled injury under section 23–1044(E), A.R.S., as follows:

"E. In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

In McKinney v. Industrial Commission, 78 Ariz. 264, 278 P.2d 887, 888, we held that the non-scheduled injury section applied to the facts in that case. There a forty-six year old employee suffered a sprained left ankle by accident arising out of and in the course of his employment which The Industrial Commission found the permanent disability to be thirty-five percent functional loss of the use of the left leg and awarded compensation for a scheduled injury. The evidence also showed that when this employee was eight years of age he lost his right leg in an non-industrial accident. We said in that case:

"We are unable to perceive how subdivision (e) can be ignored. It makes express provision for apportioning the percentage of disability chargeable to the employer for a subsequent disabling injury. By its terms special provision is made for this special situation. Under such conditions, subdivision (b) has no application. It is suggested that the prior loss of petitioner's right leg did not effect (sic) his earning power and there would be no percentage of disability to deduct from his present aggregate disability. It seems extremely unrealistic to say that a man whose sphere of employment is industrial labor has no loss of earning power by the loss of a leg, especially when subdivision (e) recognizes it as causing some disability * * *

"The thought is advanced that possibly when the statute speaks of prior

disability, prior industrial accident disability only is meant. We cannot read the word 'industrial' into the statute which merely mentions previous disability." (Citing case.)

■ As gleaned from the McKinney case, supra, we find that "previous disability" as referred to in section 23–1044(E), A.R.S., refers to previous disability which affected earning capacity at the time of the subsequent injury. The entire consideration in the non-scheduled category is a loss of earning capacity consideration. We have held that:

"There is a distinction between a pre-existing condition which is dormant and not disabling at the time of the accident and is stimulated into disability by reason of the accident, and a pre-existing disability that is added to by a second disability. In the case at bar, claimant was performing his daily manual labor with no disabling effects from his pre-existing condition up to the time of the accident, but has been disabled since. At the time of the accident he had no disability. True, he had a condition, which was susceptible of becoming a disability when aggravated. Section 56–957, Arizona Code 1939 [now section 23–1044(E) A.R.S.], does not require the Commission to give effect to such a condition and attempt to apportion the concurring causes. That section only requires the Commission to take into consideration previous disability. That means an existing disability at the time of the injury—something that affects his earning power." Lee Moor Contracting Co. v. Industrial Commission, 61 Ariz. 52, 143 P.2d 888, 890; Eagle Indemnity Co. v. Hadley, 70 Ariz. 179, 218 P.2d 488.

■ There was no doubt in the McKinney Case that the prior loss of a leg had affected the employee's earning power. In the case at bar was there such a prior loss of earning power so as to make section 23–1044(E), A.R.S., applicable? The evidence warranted the commission's finding that there was no loss of earning capacity disability existing at the time of injury. Segobiano, himself, testified as follows:

"Q. Is it your testimony that when you went to work for Goodyear your ears were in good condition? A. Yes."

"Q. You could hear very well? A. Yes."

"Q. Is that true up until the date of March 6, 1958? A. That is right."

"Q. In other words, you had never had any trouble at all with your ears up until this incident on the night of March 6th? A. Not that I can recall."

"Q. So far as you are concerned, whatever ear trouble you have springs right from that night about 8:30 o'clock on March 6, 1958? A. That is right."

■ Segobiano was performing his daily work with no disabling effects from his pre-existing loss of hearing up to the time of accident, and even after the accident he was still able to continue his regular work. He even admitted he was not aware of any pre-existing condition. This being so, we believe that The Industrial Commission was correct in awarding compensation under the scheduled section. There being no "previous disability" which affected his earning capacity at the time of the subsequent injury section 23–1044(E), A.R.S., is inapplicable.

■ The petitioner claims that The Industrial Commission erred in awarding compensation for a bilateral loss of hearing when the evidence showed that the injury occurred only to the right ear. The competent medical testimony was that there was a bilateral hearing loss and that such loss was attributable to the accident. We find that the commission did not err in this respect since it based its findings on the conclusions and recommendations of the Medical Advisory Board.

" * * * unless the result of an accident is one which is clearly apparent to the ordinary layman, such as the loss of a limb or a visible external lesion, the question as to the physical condition of a petitioner after an accident and the causal relation of the accident to such condition can usually be answered only by expert medical testimony." Caekos v. Stanley Fruit Co., 55 Ariz. 72, 98 P.2d 471, 472; Ison v. Western Vegetable Distributors, 48 Ariz. 104, 59 P.2d 649; Pacific Motor Trucking Co. v. Industrial Commission, 88 Ariz. 265, 355 P.2d 966.

Award affirmed.

STRUCKMEYER, C. J., and UDALL, JENNINGS, and LOCKWOOD, JJ., concurring.