680 P.2d 186

**CEMENTATION COMPANY OF AMERICA, INC., Petitioner-Employer,**

**State Compensation Fund, Petitioner-Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Arnulfo Morales, Respondent-Employee.**

**No. 1 CA–IC 2897.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 10, 1984.

Reconsideration Denied Feb. 21, 1984.

Review Denied April 19, 1984.

Robert K. Park, Chief Counsel, State Compensation Fund by W. Smith Michael, Jr., Tucson, for petitioners.

Sandra Day, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Rabinovitz, Dix & Rehling by Charles G. Rehling, Tucson, for respondent-employee.

OPINION

FROEB, Judge.

Respondent-employee (claimant) sustained an injury to his right knee on March

27, 1981. The injury became stationary on October 27, 1981, and the claim was closed with a 10% partial unscheduled disability of the right leg. The dispositive issue in this special action review is whether the disability is scheduled or unscheduled.

Prior to his knee injury, claimant sustained two unrelated industrial injuries. On March 21, 1964, claimant injured his left thumb while working as a construction miner. He was awarded a scheduled disability and returned to work. On February 6, 1980, claimant injured both legs at work. This injury resulted in a 2% impairment to the left leg and a 3% impairment to the right leg, an unscheduled disability. The Industrial Commission issued an award finding that claimant had not sustained any loss of earning capacity from his February 6, 1980, industrial injury and further finding that, based on a consideration of all of the matters relevant to a determination of loss of earning capacity pursuant to A.R.S. § 23–1044(D),[1] claimant has sustained no loss of earning capacity from any injury or disease as of February 27, 1981. The award was not protested and became final. *See, e.g., Massie v. Industrial Commission,* 113 Ariz. 101, 546 P.2d 1132 (1976). One month later, claimant injured his knee, which is the basis for the current claim.

The petitioner-carrier closed the knee injury claim with a scheduled disability. The claimant protested this classification and hearings were conducted. The administrative law judge issued his decision and award for unscheduled permanent partial disability on June 3, 1982. This decision was affirmed upon review on August 31, 1982. Petitioner-employer filed a timely petition for Special Action—Industrial Commission.

■ To permit apportionment under A.R.S. § 23–1044(E), successive disabilities otherwise scheduled under A.R.S. § 23–1044(B) are sometimes compensated as un-

scheduled under A.R.S. § 23–1044(C). This unscheduling occurs if the prior disability causes lost earning capacity. *See Alsbrooks v. Industrial Commission,* 118 Ariz. 480, 578 P.2d 159 (1978). This lost earning capacity is conclusively presumed if the prior disability is an industrially related scheduled disability. *See Ronquillo v. Industrial Commission,* 107 Ariz. 542, 490 P.2d 423 (1971).

■ In the present case, the 1964 thumb injury was an industrially related scheduled disability. It therefore is conclusively presumed to have caused lost earning capacity. Accordingly, the knee injury, which otherwise is within the schedule, must be compensated as unscheduled.

Despite this straightforward application of these principles to the present case, the employer and carrier argue that the conclusive presumption should not apply in this case because intervening between the scheduled thumb injury and the knee injury, earning capacity was actually assessed resulting in a finding of no loss of earning capacity when the second injury claim was closed. We disagree.

This argument erroneously assumes that the conclusive presumption arises only because a claimant has not had an opportunity to prove actual lost earning capacity. To the contrary, the conclusive presumption is statutory. A scheduled injury is "deemed permanent partial disability." A.R.S. § 23–1044(B) (Supp.1983). This statutory presumption of disability implies lost earning capacity. *See Alsbrooks v. Industrial Commission,* 118 Ariz. at 481, 578 P.2d at 160 wherein the court stated, "[A]ll the workman need show is that his injury is ... [scheduled] and thereafter disability as well as loss of earning capacity is presumed." Actual lost earning capacity is not considered. The next scheduled injury is necessarily unscheduled. *See Ronquillo v. Industrial Commission.*[2] Actual lost

---

1. One of the factors listed in A.R.S. § 23–1044(D) is any previous disability. *See* A.R.S. § 23–1044(D) (Supp.1983).

2. The court in *Ronquillo* stated that a previous *non-*industrial injury could be disregarded if the evidence showed that the previous disability had no effect on earning capacity at the time of the subsequent injury. ▫ This situation was distin-

**52**

earning capacity is equally irrelevant to classifying succeeding disabilities.

The employer and carrier argue that this result is illogical where there has been a determination that the first scheduled injury did not actually result in loss of earning capacity. We disagree. The rationale for unscheduling scheduled disabilities is that the cumulative effect of two scheduled disabilities may exceed the arithmetic total of the two scheduled allowances. *See* 2 A. Larson, *Workmen's Compensation Law*, § 58.24 at 10–274 (1981). It is also possible that where there is an overlap between two disabilities, a collective effect of the injuries could be less than the arithmetic total derived from adding each individual injury together. *Id.* at n. 34.1. *See Bethlehem Steel Corp. v. Dipolito*, 168 Ind.App. 417, 344 N.E.2d 67 (1976). Thus, a more appropriate computation of the subsequent disability can be determined by computing the percentage of the entire disability and deducting the percentage of the previous disability as it existed at the time of the subsequent injury. *See* A.R.S. § 23–1044(E).

Petitioner's and Carrier's proposal that the conclusive presumption should not apply where earning capacity has actually been assessed is inappropriate for two reasons. First, the solution is haphazard since it depends upon a fortuitous proof opportunity. The assumption underlying the proposal suggests that proof of actual lost earning capacity should be required in all cases, contrary to the holding in *Ronquillo*. Second, the proposal would have an unfair result in situations where a prior industrially related scheduled disability is not actually disabling when a succeeding scheduled injury occurs, but the cumulative effect of the two nevertheless exceeds the arithmetic total of the two scheduled allowances. For example, if in the present case the third injury had been a thumb injury, even though the first injury was nondisabling, the cumulative effect of the injuries could be greater than the scheduled allowances added together.

For the foregoing reasons, we conclude that the conclusive presumption applies and therefore the first injury was disabling. The third injury therefore must be compensated as unscheduled.

 The employer and carrier also argue that the administrative law judge erroneously excluded medical evidence about the claimant's actual lost earning capacity from the first injury. Because the conclusive presumption of lost earning capacity applies, this evidence was irrelevant.

Award affirmed.

CONTRERAS, P.J., and OGG, J., concur.

---

guished from one in which there is a prior *industrially* related disability. In this situation, the court stated, the Commission could not "ignore the prior disability by finding that the prior disability had no effect on the workman's earning capacity at the time of the second injury." 107 Ariz. at 543, 490 P.2d at 424.